CHARLES H. JORDAN, ADM'R, v. BERNHARD DAVID AND OTHERS.

A defendant is not entitled to damages, of course, on the dissolution of an injunction; but only on proof of actual damage. And it would seem that the rule is the same where a writ of attachment or sequestration is quashed.*

In this case the verdict for the defendants in a suit on an injunction bond was sustained, on the ground that there was no evidence of actual damage.

It would seem that damages caused by an injunction or attachment, to the credit and standing of the defendant, do not abate at his death.

Quere, whether sureties in an injunction bond are liable, beyond the actual damage sustained, for exemplary damages to which the defendant may be entitled, as against the principal in the bond.

See this case as to whether a defendant in an injunction, which has been dissolved, can recover, on the injunction bond, the reasonable attorney's fees, paid by him in defending the injunction suit.

Appeal from Jackson. Tried below before the Hon. Fielding Jones.

On the 22d of December, 1852, appellant's intestate sued the appellees, alleging that on the 5th of May, 1851, the appellee

---

* Quere, whether the sureties were liable, in this case, for damages caused by the wrongful seizure of the plaintiff's goods.—REPS.

Jordan v. David.

David filed his petition in said District Court, praying for a writ of seizure of the goods, wares and merchandise of your petitioner, and of the books, notes, accounts and effects in his possession, and for a writ of injunction restraining petitioner from disposing of said goods, and from collecting said notes and accounts; that the writ of seizure and injunction was granted, and levied by the Sheriff on the 5th of May, 1851; that under said levy, goods, cash and notes were seized, amounting to $4,597 32, and accounts to the amount of $2,082 98, as shown by the Sheriff's inventory and appraisement, which was not more than their real value; that in compliance with the order of the Judge, granting the writ, the said David, with his co-defendants as his sureties, executed their bond to this petitioner, in $11,000, conditioned that the said David should abide the decision in said injunction suit, and well and truly pay all sums of money and costs that may be adjudged against him, if said injunction should be dissolved in whole or in part; that on the final hearing of said cause, in October, 1852, the injunction was dissolved and a verdict and judgment rendered for petitioner; that by said judgment said bond was forfeited, and the obligors made liable to this petitioner for the penalty; that at the time of the commencement of said suit, and the levy of said attachment, this petitioner was a merchant in good standing and doing a good business at Texana, in Jackson county, which said business, in the profits thereof, was worth annually to petitioner $2,000; that by the levy of said injunction this petitioner's business was entirely broken up, his store closed, and all his property taken out of his possession, by which he has suffered loss in the sum of $4,000; that by said levy his credit and standing as a merchant were injured in the sum of $10,000; that by said levy he lost the interest on said accounts, amounting to $1,000, and his goods, wares and merchandise remained on hand after the season for their profitable sale, and became depreciated in value, by which depreciation petitioner sustained damage in the sum of $3,000; that said suit by the said David was entirely groundless and malicious, and that said injunction wrongfully issued, to petitioner's damage $11,000. Prayer for damages as set forth, and for general relief.

The defendants answered: 1st. The general issue; 2d. *Nul tiel* record; and 3d. Payment of the costs of the injunction suit, for which only there was judgment against plaintiff therein.

The plaintiff died, and appellant was made a party. In an amendment to the petition, filed April 4th, 1856, the plaintiff

alleged, among other things, that the defendant David did not abide the decision in said injunction suit, in that he did not pay the costs adjudged against him, and in that he did not pay the intestate all sums of money as indemnity for the losses and damages sustained by the levy of said injunction; and that his intestate sustained other loss and damages by the wrongful suing out said injunction, in attorneys' fees in defending said injunction suit, in the sum of $500. To this amendment defendants demurred, on the ground that it set up new causes of action which were barred by limitation. Demurrer sustained as to the item for attorneys' fees.

After the death of the original plaintiff, E. L. Jordan, defendants filed exceptions to the further prosecution of the suit, in so far as it claimed $10,000 damages for injury done to the credit and standing of said deceased as a merchant. Exception overruled.

Statement of facts proven at the trial. The plaintiff read to the jury the petition for injunction; the answer thereto; the writ of injunction and seizure, and Sheriff's return, including the inventory and appraisement; the answers of defendant in said suit to interrogatories; the injunction bond and final judgment in said suit. [The petition for the injunction, among other things, alleged the existence and dissolution of a partnership between that plaintiff and defendant, as merchants at Texana; the conveyance of all that plaintiff's interest in the partnership effects to that defendant, and the undertaking of that defendant to pay the debts; that that defendant induced him to withdraw from the partnership, with the fraudulent intent to sell the goods, pocket the money and abscond from the State, leaving the creditors unpaid, and that plaintiff liable for the debts; that he was then engaged in converting the goods into money for that purpose. The defendant fully answered, especially denying every allegation of fraud, and averring that he had paid largely to the creditors, and was carrying out the agreement of dissolution in good faith.] Plaintiff then introduced Gayle as a witness, who testified that the storehouse was closed nine days, when Jordan replevied the property; that witness was one of his sureties; that Jordan placed in his hands (as he understood, for the security of his sureties) the greater part of the claims due the said Jordan, and for the same purpose delivered to him all moneys arising from the sale of the goods; that the goods were all sold in the summer of 1851, and the notes and accounts collected during the pendency

of the suit, and upon the termination of the suit witness handed over to Jordan all his effects, charging him nothing for witness' trouble. Witness understood that Jordan's sureties required him to place his effects in witness' hands, for their security, although he himself made no such conditions; that Jordan closed up his business and left Texana. He had heard of no intention on Jordan's part to leave Texana previous to the levy of the injunction. After the time of the levy of the injunction, Jordan was doing as good a business as other merchants in town; stood fair as an honorable business man; that he was much distressed in mind by the levy of said injunction.

Thomas Haynes, for plaintiff, testified that a portion of notes attached or enjoined were in his hands for collection, say twelve or fourteen hundred dollars; that the collection of the same was not interfered with or impeded by the injunction; that upon the termination of said suit he paid over to Jordan the money in his hands, with the exception of a portion which he retained in payment of a debt against said Jordan, which had been placed in his hands for collection.

Haynes and some other witnesses stated substantially (language of statement of facts) what Gayle stated as to Jordan's standing and business as a merchant; and all the witnesses agreed that said Jordan's character for honesty and integrity among the people was not impaired by the levy of said injunction.

Defendants proved that they had paid the costs in the suit complained of. Proved by David Goodman that the firm of Jordan & David owed witness $86 50, due on the 14th of April, 1851, and was still due and unpaid. Proved by James Gould that said firm was indebted to John M. Gould in the sum of $558 96, due before the 5th of May, 1851, and still unpaid. Proved by A. G. Bull that said firm was indebted to A. G. Bull & Co. $472 27, due before the 5th May, 1851, and $112 77 still unpaid. Proved by Charles C. Gaines that said firm was indebted to witness $405, due 6th July, 1850, and still unpaid. Defendants also proved by a witness that he, witness, had had in his hands, for collection, since the pendency of the injunction suit, the debt mentioned in Jordan's answer to said suit, as due Edward Leon; that but a small portion of said debt had been paid, and the remainder was yet unpaid. Witness further proved that since the death of said E. L. Jordan, Goldsmith, Harver & Co. sent to witness, for collection, the debt for $3,254 35 mentioned in Jordan's answer to

said injunction suit; that about $1,000 had been paid on said debt, and that the residue is still unpaid; that Goldsmith, Harver & Co. claim that the present plaintiff assumed, during the life of his intestate, to pay said debt, which the plaintiff denied, and stated that he only pledged himself that the said G., H. & Co. should have their *pro rata* of the money recovered in this suit.

The answer of Jordan in the suit of David against him, admitted that by the terms of the dissolution of the partnership of Jordan & David, Jordan undertook to pay all the debts of the firm, and pay said David $650 in cash, stock and goods; the receipt of which was acknowledged by the articles of dissolution, a copy of which was in the said answer; and in consideration whereof said David relinquished all claims to the partnership property, to said Jordan. The articles of dissolution were dated the 13th of Dec. 1850. Said answer also admitted that at the time of the dissolution, the firm was indebted to Edward Leon in the sum of $678 87; to A. G. Bull & Co., $499 94; to David Goodman & Co. $86 80; to Charles C. Gaines, $402 15; to John M. Gould, $550; to Goldsmith, Harver & Co., $3,284 35.

The balance of said answer was made up of denials, especially of denials of allegations of acts of violation of the terms of dissolution, and of the charges of fraud, and of failure on his part to comply with his contract with the plaintiff in that suit.

The prayer in the petition of David, was for an injunction directed to the Sheriff, requiring him to seize upon all the goods, &c., and that said Jordan be enjoined, &c. The *fiat* of the Judge was that the Clerk should issue the writ of injunction as prayed for, to the Sheriff, commanding him to levy upon the property, &c., repleviable by defendant; and also enjoining said defendant, &c.; said writ to be issued upon plaintiff's giving bond, with security, in the sum of $11,000. The terms of the bond have been stated, and it will be observed that they only relate to an injunction. The writ was issued by the Clerk in the terms of the petition of the plaintiff, and *fiat* of the Judge. It did not appear that there had been any effort in said suit, to quash said writ or dissolve the injunction, until the final trial, which was by jury, and resulted in a verdict for the defendant therein.

The Court charged the jury, that they should find exemplary damages, if the injunction was maliciously sued out, but if it was sued out in good faith, then only such damages as the plaintiff's

intestate had actually sustained. Verdict and judgment for defendants. Motion for new trial overruled, &c.

The assignments of error were very general, so much so as to suggest whether they were not a form to be used in all cases. The only one that could be supposed to refer to the ruling of the Court, sustaining the exceptions of defendants to the claim in the amended petition, for damages for attorney's fees, was, that the Court erred in sustaining defendants' special exceptions to plaintiff's petition.

*W. S. Glass*, for appellant. Several errors are assigned, but that chiefly relied upon, is that the verdict was contrary to the evidence and the law, as correctly charged by the Judge. The injunction complained of was something more than an injunction; it was also an attachment or sequestration. It was granted at the suit of a plaintiff, who had no interest either as creditor or owner, in the property seized, and upon allegations of fraud which were a libel upon the reputation of the defendant, both as a man and merchant. The judgment dissolving it, after a trial upon the merits, proved that it was wrongfully and *prima facie* maliciously sued out. This presumption of malice was rebutted neither by plea, nor proof on the part of defendants; while it was strengthened and fortified by the plaintiff's other testimony. The plaintiff's intestate was a man of integrity; a merchant in good standing, and doing a good business, when the injunction was obtained. His goods, money, notes and accounts were seized and his storehouse closed for nine days. To get sureties to his replevin bond, he was compelled to put his effects in the hands of one of them. Thus deprived of the use of his property for eighteen months, during which the suit was pending, and as a necessary consequence his credit destroyed, his business was entirely broken up, and he forced to leave the county in search of other employment. This is a much stronger case for the plaintiff than that referred to and approved by Mr. Justice Lipscomb, in Cloud v. Smith, 1 Tex. R. 616. There no actual damage was sustained, and yet the jury returned a verdict for a much larger amount than the debt due to the attaching creditor. It cannot be objected that there was no testimony sufficiently definite and certain to establish any amount of pecuniary damages sustained. The value of the attached property was proven and the plaintiff was unquestionably entitled to recover—if nothing more—legal interest upon that value during the pendency

of the injunction suit. The evidence shows that the plaintiff's intestate was injured in every possible way in which such a writ could injure.

*J. J. Holt*, for appellees. Parties' liabilities or bonds are governed and controlled by the express terms and clear import of the instrument. (2 Tex. R. 250; 4 Id. 448; 3 Id. 114; 5 Howard, Mi. R. 298.) The defendant David abode the decision in the case, and paid the money adjudged against him, and thereby fully discharged the terms of the bond before this suit was commenced.

But if we adopt the construction placed upon the bond by the plaintiff, and enlarge the conditions so as to make the obligors liable for consequential damages, the plaintiff, to make out a case, must establish by proof the damages sustained. This he has attempted to do, and submitted his testimony to a jury who say that the plaintiff's intestate sustained no damage.

HEMPHILL, CH. J. This was a suit on an injunction bond, for damages occasioned by the injunction. Special damages, on various grounds, were enumerated in the petition.

The charge of the Court was fair and unexceptionable, instructing the jury that they might find both actual and vindictive damages, if warranted by the testimony. They found for the defendant, and their finding is certainly not against the evidence.

There does not seem to be any positive testimony that the plaintiff suffered any damage from the injunction. It is affirmatively proven, that he was not injured in his character for honesty and integrity; that he sold his goods, and debts due him were collected, as usual, during the pendency of the injunction; and large partnership debts, to secure which the injunction was sued out, were left unpaid by him, and are still due.

Whether sureties on an injunction bond could be made liable for vindictive damages, or those inflicted for maliciously suing out the writ, is questionable; but the plaintiff had the benefit of his averment and charges of the Court to that effect; and upon the whole it seems that he has no just grounds of complaint against the judgment, and it is therefore ordered to be affirmed.

Judgment affirmed.